Filed 2/27/26  P. v. Hill CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D083487, D083908 |
| Plaintiff and Respondent, | (Super. Ct. No. SCD289720) |
| v. | |
| JOHNNY HILL et al., | |
| Defendants and Appellants. | |

CONSOLIDATED APPEALS from judgments of the Superior Court of San Diego County, Kimberlee A. Lagotta, Judge.  Affirmed in part, reversed in part, and remanded with instructions.

Randi Covin, under appointment by the Court of Appeal, for Defendant and Appellant Johnny Hill.

Robert E. Boyce, under appointment by the Court of Appeal, for Defendant and Appellant Floyd L. Garrett.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland and Arlene A. Sevidal, Assistant

Attorneys General, Eric A. Swenson and Christine Y. Friedman, Deputy Attorneys General, for Plaintiff and Respondent.

Johnny Hill and Floyd L. Garrett (together appellants) are members of the Neighborhood Crips (NHC), a criminal street gang in San Diego. A jury convicted them of the second degree murder of Ernest B. It also found them guilty of assaulting Dorian C. with a semiautomatic firearm (count 2), possession of a firearm by a felon (count 3) and found true related firearm enhancement allegations. The court sentenced Garrett to an indeterminate term of 55 years to life, and a determinate term of 58 years, and Hill to an indeterminate term of 55 years to life, and a determinate term of 26 years.

Appellants argue the trial court prejudicially erred by (1) admitting gang-related evidence after bifurcating the gang enhancements; and (2) excluding evidence of Ernest's prior violence and gun possession. They also claim error in (1) instructing jurors that gang evidence could be used to assess the credibility of witnesses and (2) whether sufficient evidence exists proving their guilt of assaulting Dorian with a semiautomatic firearm. Hill also argues insufficient evidence supports his guilt for (a) second degree murder and (b) his enhancement for discharging of a firearm causing death. Hill also argues his two-strike sentence should be reversed. Finally, both contend the cumulative effect of the above errors requires reversal of their judgments.

The People concede, and we agree, that Hill's two-strike sentence must be vacated and the matter remanded for a possible retrial of his prior conviction allegations. We reject appellants' remaining challenges and affirm the judgments.[1]

---

[1] This conclusion moots appellants' remaining argument alleging cumulative error.

2

## FACTUAL BACKGROUND

A.    *The Shooting*

On December 28, 2019, at around 7:30 p.m., a San Diego Police Officer heard multiple gunshots near Imperial Avenue and 16th Street in an area called The Bottoms which is known for violent crime and heavy narcotics trafficking. This area is within West Coast Crips' (WCC) territory, a gang aligned with NHC. It is common for NHC gang members to be in The Bottoms selling drugs.

The police officer saw people in the middle of the street in front of the Alpha Project dragging a person toward the sidewalk. The man was unable to talk but his driver's license identified him as Ernest. The officer did not see any firearm, knife, or weapon in the area. A person at the scene gave Ernest's cell phone, handheld radio, and keys to law enforcement. Ernest's cell phone holster, which he wore on his right hip, had a bullet hole in it, but his cell phone did not.

Ernest passed away. An autopsy revealed four gunshot wounds, one above his right hip bone, one in the upper back part of his right arm, one through his right thigh, and one through his right lower leg. Based on the trajectory of the bullet that entered his hip, Ernest was likely bent over and facing away from the shooter at an angle when he sustained that wound.

Ernest worked for the Alpha Project which provides services for homeless people. Dorian, another Alpha Project employee, was inside a mobile trailer on the Alpha Project property during the shooting. Dorian suffered a graze wound on his left shin area, and had two holes in his pants, consistent with a bullet entering his pants, grazing his leg, and exiting his pants. Although Dorian provided a brief statement, he was not very cooperative and refused to allow an officer to take pictures of the wound.

3

B.  *The Investigation*

Police obtained video footage from cameras near the scene of the shooting. Surveillance footage showed a white sedan turning onto Commercial where it parked.  One individual got out of the car and walked north across Commercial. About 20 seconds later, another individual came from the same location and also walked across Commercial.  One of the men wore a black hooded sweatshirt with the hood pulled up.  The other man wore a dark blue shirt, dark two-toned sneakers with a lighter marking below the laces, a tan hat with a bluish colored Polo logo in the middle, and tan pants.  From still images obtained from the videos, police identified the man in the black hooded sweatshirt as Hill.  After reviewing social media, police identified the second man as Garrett.

Appellants walked on 17th Street, with Garrett walking a few paces ahead of Hill.  The men then walked beside each other.  The men crossed Imperial, walking on the side of the street opposite the Alpha Project.  In the meantime, surveillance footage also showed Ernest and Dorian arriving across the street from the Alpha Project in Ernest's white truck.  Dorian entered the Alpha Project Gate and then a trailer on the property.  When Ernest started to cross the street, appellants passed behind him.  As Ernest crossed the street, Hill fired the first shots, and Garrett immediately fired multiple rounds.  Hill then fired an additional shot as he fled.  Appellants ran back to Hill's car and drove away together.  Evidence recovered from the scene suggest it was Garrett, and not Hill, who killed Ernest.

4

DISCUSSION

I.

*Evidentiary Issues*

A.    *Legal Principles*

"Except as otherwise provided by statute, all relevant evidence is admissible." (Evid. Code,[2] § 351.) Evidence is considered relevant when it has some rational connection to proving or disproving a disputed fact that is significant to the outcome of the case. (§ 210.) A trial court, however, retains broad discretion under section 352 to exclude such evidence when its probative value is substantially outweighed by the likelihood that its admission will unduly consume time, unfairly prejudice a party, confuse the issues, or mislead the jury. (§ 352.) A trial court's ruling on the admission or exclusion of evidence will not be overturned unless it is shown that the court exercised its discretion in an arbitrary, capricious, or irrational manner that resulted in a miscarriage of justice. (*People v. Mataele* (2022) 13 Cal.5th 372, 413–414.) This deferential standard presumes the trial court properly followed the governing law and acted within its discretion, absent an affirmative showing to the contrary by the appellant. (*Id.* at p. 414.)

California courts have consistently exercised caution when allowing gang evidence in criminal trials, recognizing that such evidence poses a risk the jury may draw an improper inference that the defendant is predisposed to criminal behavior and thus guilty of the charged offense. (*People v. Hinojos* (2025) 110 Cal.App.5th 524, 548 (*Hinojos*).) Because gang enhancement evidence can be "unreliable and prejudicial" when presented alongside the underlying charges, the Legislature enacted Assembly Bill No. 333 (2021–

---

[2]    Undesignated statutory references in part I of this opinion are to the Evidence Code.

2022 Reg. Sess.)  (*Hinojos,* at p. 549.)  This law added Penal Code section 1109, mandating separate trials for gang enhancements and the underlying offenses if the defense so requests.  (*Hinojos,* at p. 549.)  Despite Penal Code section 1109, the same gang evidence used to prove a gang enhancement may still be admissible at a separate trial on the underlying crime.  (*Hinojos,* at p. 549.)  Evidence of a defendant's gang ties—such as territory, symbols, rivalries, and activities—can be relevant to proving identity, motive, intent, or the means of committing the offense.  (*Ibid.*)

Relevant gang evidence must be admitted with caution because it can unduly influence a jury.  (*People v. Garcia* (2024) 107 Cal.App.5th 1040, 1050 (*Garcia*).)  Section 352 allows a court to exclude such evidence if its prejudicial impact substantially outweighs its usefulness.  (*Garcia,* at p. 1050.)  The trial court has broad discretion in these determinations, and appellate review is limited to cases where the discretion was clearly misused in a way that caused a miscarriage of justice.  (*Garcia,* at p. 1050.)  The appellant bears the burden to establish both an abuse of discretion and actual prejudice.  (*Ibid.*)  We review admission of gang evidence for harmlessness under *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*).  (*Garcia,* at p. 1050.)  Any  error is harmless unless there is a reasonable probability the jury would have reached a result more favorable to the defendant absent the error.  (*Watson,* at p. 836.)

B.    *Admission Gang Evidence*

The trial court granted Hill's motion to bifurcate trial of the gang-enhancement allegations pursuant to Penal Code section 1109.  However, it also granted the prosecutor's motion to introduce gang evidence during the guilt phase, finding the evidence more probative than prejudicial and relevant to issues of motive, identity, and intent.  The court limited this evidence to:  (1) the

6

existence of NHC, including their history, territory, hierarchy, signs, symbols, rivalries, and alliances; (2) expert testimony about appellants' gang membership, participation, tattoos, hand signs, and associations; and (3) expert testimony regarding the culture and habits of Black criminal street gangs and their members.

Appellants contend the trial court abused its discretion by admitting gang evidence to prove the underlying charges, asserting the evidence was cumulative and more prejudicial than probative. They argue the jury already had sufficient evidence of their association without reference to their NHC membership. We conclude the record shows the gang evidence was directly relevant to motive and intent and properly admitted under section 352.

The prosecution is permitted to introduce evidence of gang affiliation when it helps establish motive or intent. (*People v. Duong* (2020) 10 Cal.5th 36, 64.) Motive evidence is inherently probative, often outweighing potential prejudice, and trial courts are granted broad discretion to admit it. (*Ibid.*) Here, the gang evidence provided critical context explaining why appellants would open fire on Ernest.

Ernest was shot in what the gang expert described as a high narcotics trafficking area frequented by individuals buying or selling drugs. Although this was WCC territory, NHC was aligned with WCC, and WCC permitted NHC members to sell drugs there. It was common for NHC members, including older members, to sell narcotics in that area.

The expert further testified that each gang controls who is allowed to sell drugs in their territory. Only members or approved associates may operate there, while rivals or outsiders are excluded and risk violent retaliation if they attempt to sell without permission. Against that backdrop, Hill testified that just before the shooting, Ernest said, " 'Ain't gonna be getting no money right

here. Ain't nobody going to be [selling] around here.' " To appellants—both NHC members—this statement would have been a direct challenge to their authority and a sign of disrespect, providing a strong gang-related motive to retaliate.[3]

Hill also testified that as Ernest spoke, Ernest raised his arm. Believing Ernest had a gun in his hand, Hill fired in self-defense, thinking he was about to be shot. The record, however, indicates that if Ernest did raise his arm, he was holding a cell phone—not a firearm. The gang evidence was relevant to counter appellants' claim they acted in self-defense.

Thus, the gang evidence was not merely cumulative or tangential; it put the circumstances leading to the shooting in context and provided a coherent motive for the crime. Without that context, the jury would have been left with an incomplete picture of why the confrontation escalated into lethal violence. The trial court therefore acted within its discretion in finding the evidence more probative than prejudicial under section 352.

Even if some of the gang evidence could be viewed as marginally cumulative, any assumed error was harmless. "The admission of gang evidence over [a] . . . section 352 objection will not be disturbed on appeal unless the trial court's decision exceeds the bounds of reason." (*People v. Olguin* (1994) 31 Cal.App.4th 1355, 1369.) Reversal is warranted only if there is a reasonable probability of a more favorable outcome absent the alleged error. (*Watson, supra*, 46 Cal.2d at p. 836.)

---

[3] Although the jury rejected both first degree murder and the special circumstance that appellants intentionally killed Ernest by means of lying in wait, the gang evidence remained relevant to the issue of intent. Even if the nongang evidence—such as appellants' firing multiple shots at Ernest—independently supported an inference of intent to kill, the gang evidence was probative in strengthening this inference.

The evidence "about gang culture . . . the significance of disrespect . . . was highly relevant to [appellants'] possible motive for the charged crimes." (*People v. Flores* (2020) 9 Cal.5th 371, 402.)  Although the evidence detailed gang culture, including the commission of murder, to garner and maintain respect, it did not characterize NHC as a violent gang, nor did it include any specific information about other crimes committed by NHC gang members.  None of the evidence was likely to arouse the jurors' emotions or distract them from their duty to determine whether the prosecution proved appellants' guilt on the charged offenses.  (*People v. Scott* (2011) 52 Cal.4th 452, 491 [evidence unduly prejudicial if likely to inflame the jury's emotions and evoke a verdict based on passion rather than reason].)  Moreover, appellants identify nothing in the gang expert's testimony that is remotely as inflammatory as the evidence of the charged conduct—namely, repeatedly shooting at Ernest—and thus nothing likely to provoke jury bias against them.

Given the probative value of the gang evidence admitted at trial, we cannot conclude the trial court abused its discretion in determining that its probative value was not substantially outweighed by any prejudicial effect.

C.    *Exclusion of Evidence Regarding Ernest*

1.  Additional Background

Hill moved to admit evidence of Ernest's prior violence under section 1103, and the prosecutor moved to exclude it.  At a pretrial hearing, Benito D. testified that he knew Ernest as a third-party delivery driver when he worked as a dispatcher.  One day in 2019, Benito heard their boss, Abdi F., on the phone yelling at Ernest to return the company van.  Abdi then asked Benito to accompany him to collect the van because Ernest had not been delivering packages on time.  Ernest walked over to the passenger side of Benito's car, opened the door, and started punching Abdi in the face as

9

Abdi fought back. Ernest yelled, "Don't ever talk to me like that." Benito did not know anything about the relationship between Abdi and Ernest and did not know if there had been previous incidents of Abdi threatening Ernest. Abdi did not return to work for more than a year.

The trial court excluded the evidence under section 352. The court found Benito provided insufficient evidence showing Ernest was the initial aggressor, commented that Benito did not know what occurred between these individuals before this incident, including what Ernest might have been saying while Abdi was yelling at him over the phone. Additionally, because Abdi was not the one testifying, it could not determine if section 1103 applied.

2. Analysis

Appellants contend the trial court prejudicially erred by excluding evidence of Ernest's prior act of violence and his possession of three firearms at his home. They argue the exclusion violated their constitutional rights to confront witnesses, present a defense, and receive due process of law. The People maintain the trial court properly excluded the evidence under section 352. We agree with the People.

Section 1101, subdivision (a), prohibits the admission of evidence of a person's character to prove his conduct on a specified occasion. Section 1103, subdivision (a), provides an exception to that rule, stating, "In a criminal action, evidence of the character . . . of the victim of the crime for which the defendant is being prosecuted is not made inadmissible by section 1101 if the evidence is:  [¶]  (1) Offered by the defendant to prove conduct of the victim in conformity with the character or trait of character." For the purposes of proving self-defense, whether the defendant was aware of the victim's propensity for violence is immaterial because such evidence " 'nevertheless

10

tends to show that the victim was probably the aggressor.' " (*People v. DelRio* (2020) 54 Cal.App.5th 47, 55 (*DelRio*).) The admission of a victim's character evidence pursuant to section 1103 "is subject to the dictates of . . . section 352." (*People v. Wright* (1985) 39 Cal.3d 576, 587.)

As appellants correctly observe, evidence tending to show Ernest was the aggressor may be relevant to whether defendants acted in reasonable or unreasonable self-defense. They assert the court improperly excluded such evidence based on a credibility assessment of Benito, contending credibility concerns go to the weight, not the admissibility, of evidence.

Appellants' argument is unpersuasive. When the court's remarks are viewed in context, it is apparent the exclusion was not based on a disbelief of Benito's testimony but on the insufficiency of this testimony to establish that Ernest was the initial aggressor. Benito heard only Abdi's side of the telephone exchange and could not recall whether Abdi made any statements indicating an intent to behave aggressively when retrieving the van. He further lacked knowledge about the nature of Abdi's past relationship with Ernest or whether Abdi had ever made any threats against Ernest. Given these limitations, the trial court reasonably concluded Benito's testimony lacked the requisite foundation and probative value to aid the jury in determining who initiated the confrontation. The exclusion of this evidence therefore constituted a proper exercise of discretion under section 352.

Moreover, the trial court appropriately considered that admission of Ernest's prior violent conduct would have permitted the prosecution to introduce evidence of appellants' own violent character under section 1103, subdivision (b). Such rebuttal evidence included Hill's prior conviction for assault with a firearm and Garrett's prior convictions for attempted murder, battery, and use of a firearm during a bank robbery. (*People v. Fuiava* (2012)

11

53 Cal.4th 622, 696.) The court could have reasonably determined that whatever minimal probative value the proffered evidence might have had was substantially outweighed by the danger of undue prejudice, confusion of the issues, and consumption of time.

We also discern no error in excluding evidence that Ernest possessed firearms at his home. Hill testified that he did not know Ernest and there is no evidence in the record suggesting Garrett knew him either. Accordingly, appellants could not have known Ernest owned firearms. As such, Ernest's firearm possession could not be relevant to appellants' own state of mind. (*People v. Tafoya* (2007) 42 Cal.4th 147, 165.) Moreover, we fail to see how Ernest's possession of firearms at his *home* tended to prove his character for violence. Although Hill claims he opened fire in self-defense believing Ernest had pointed a gun at him, no weapons were found at the scene. Rather, even assuming Hill's claim that Ernest turned and raised his arm with something in his hand, the record suggests the object in Ernest's hand was a cell phone. The court properly instructed the jury on imperfect self-defense and defense of another—claims the jury necessarily rejected. (CALCRIM No. 571.)

Finally, contrary to appellants' claim, the trial court's ruling did not violate their federal constitutional right to present a defense. "[T]he application of the ordinary rules of evidence under state law does not violate a criminal defendant's federal constitutional right to present a defense, because trial courts retain the intrinsic power under state law to exercise discretion to control the admission of evidence at trial." (*People v. Abilez* (2007) 41 Cal.4th 472, 503.) "Although completely excluding evidence of an accused's defense theoretically could rise to this level, excluding defense evidence on a minor or subsidiary point does not impair an accused's due

12

process right to present a defense." (*People v. Fudge* (1994) 7 Cal.4th 1075, 1103.)

On this record, the trial court's exclusion of Ernest's prior violent conduct and firearm possession was neither arbitrary nor an abuse of discretion. The court properly weighed the minimal probative value of the evidence against its potential to mislead the jury and open the door to highly prejudicial rebuttal evidence. Because the ruling was consistent with the principles of section 352, appellants have not shown error—constitutional or otherwise.

## II.

### *Instructional Issue*

Appellants' claim the trial court prejudicially erred in instructing with an optional paragraph within CALCRIM No. 1403 informing jurors that gang evidence could be used to assess the credibility of witnesses.[4] Appellants', however, did not object to this optional paragraph and forfeited

---

[4] In full, CALCRIM No. 1403 provided: "You may consider evidence of gang activity only for the limited purpose of deciding whether: [¶] The defendant acted with the intent, purpose, and knowledge that are required to prove the charged crimes, lesser crime, and special circumstance allegation; [¶] OR [¶] The defendant had a motive to commit the crimes charged; [¶] OR [¶] The defendant actually believed in the need to defend himself or someone else and acted under fear of imminent death or great bodily injury to himself or someone else; [¶] OR [¶] The defendant acted in the heat of passion; [¶] OR [¶] A defendant aided and abetted another defendant in the commission of the charged crime, lesser crime and special circumstance allegation; [¶] OR [¶] A defendant intended to participate in an uncharged conspiracy in this case. You may also consider this evidence when you evaluate the credibility or believability of a witness and when you consider the facts and information relied on by an expert witness in reaching his or her opinion. [¶] You may not consider this evidence for any other purpose. You may not conclude from this evidence that the defendant is a person of bad character or that he has a disposition to commit crime."

13

the issue.  Appellants claim ineffective assistance of counsel for any forfeited claims.

To establish ineffective assistance, a defendant must show both that counsel's performance fell below an objective standard of reasonableness and that, but for counsel's errors, there is a reasonable probability of a more favorable outcome.  (*Strickland v. Washington* (1984) 466 U.S. 668, 687.)  A reviewing court may resolve the claim on the ground of lack of prejudice alone.  (*Id.* at p. 697.)  And on direct appeal, a conviction will be reversed only if the record affirmatively establishes counsel had no rational tactical purpose, was asked for a reason and provided none, or could have had no satisfactory explanation.  (*People v. Mai* (2013) 57 Cal.4th 986, 1009 (*Mai*).)

Here, the record is silent as to why Hill's defense counsel and Garrett, who represented himself at trial, did not request this portion of the instruction be removed.  Thus, appellants must establish that there could be no satisfactory explanation for this failure.  They cannot make this showing.

This case did not involve contradictory testimony regarding the shooting.  (Compare, *Garcia, supra*, 107 Cal.App.5th at p. 1056 [gang-related evidence "had little, if any, relevance to the substantive crimes" and witness credibility was central to the case].)  Hill's defense counsel and Garrett may have tactically concluded removing this paragraph was not necessary given the trial court's instruction to jurors that some of the instructions might not apply depending on the facts.  (CALCRIM No. 200; *People v. Riel* (2000) 22 Cal.4th 1153, 1202 [trial counsel has no "duty to object simply to generate appellate issues" and "[s]ometimes, the best action an attorney can take regarding an available objection is not to make it"].)  Since there is rational tactical purpose for failing to object to this portion of the instruction,

14

appellants' claims are "more appropriately resolved in a habeas corpus proceeding." (*Mai, supra*, 57 Cal.4th at p. 1009.)

III.

*Sufficiency of the Evidence Issues*

To determine the sufficiency of the evidence, "we review the entire record in the light most favorable to the prosecution to determine whether it contains evidence that is reasonable, credible and of solid value, from which a rational trier of fact could find that the elements of the crime were established beyond a reasonable doubt." (*People v. Tripp* (2007) 151 Cal.App.4th 951, 955.) We must "view the evidence in the light most favorable to respondent and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." (*People v. Lewis* (1990) 50 Cal.3d 262, 277.) Reversal based on insufficient evidence is warranted only if "it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' " (*People v. Bolin* (1998) 18 Cal.4th 297, 331.) " '[I]t is the jury, not the appellate court which must be convinced of the defendant's guilt . . . .' " (*People v. Nguyen* (2015) 61 Cal.4th 1015, 1055–1056.) The testimony of a single witness, if believed by the trier of fact, is sufficient to support a conviction, unless that testimony is physically impossible or inherently improbable. (*People v. Young* (2005) 34 Cal.4th 1149, 1181.)

Appellants challenge the sufficiency of the evidence proving their guilt of assaulting Dorian with a semiautomatic firearm. Hill also claims insufficient evidence exists proving his guilt for second degree murder and his 25 years to life enhancement for discharge of a firearm causing death. As we will explain, we reject his arguments.

15

A.      *Assaulting Dorian with a Semiautomatic Firearm*

Surveillance footage showed Ernest and Dorian arriving across the street from the Alpha Project in Ernest's white truck.  Dorian enters the Alpha Project Gate and then a trailer on the property.  Seconds later, Ernest is shot.  When police later questioned Dorian, they observed a wound on his left shin that appeared consistent with a bullet graze.  His pants had two holes, suggesting a bullet had entered, grazed his leg, and exited.  Investigators also noted marks on the fence outside and the wall inside the trailer that appeared to have been caused by bullets.

Appellants argue their convictions for assaulting Dorian with a semiautomatic firearm (Pen. Code,[5] § 245, subd. (b)) must be reversed.  They claim the evidence fails to establish (1) Dorian's leg wound was caused by a bullet or sustained during the shooting, and (2) they knew anyone other than Ernest was likely to be injured or that Dorian was inside the trailer.  We disagree.

To prove a violation of section 245, subdivision (b), the prosecution was required to show:  (1) the defendant committed an act with a semiautomatic firearm that, by its nature, would directly and probably result in the use of force against another person; (2) the act was done willfully; (3) the defendant was aware of facts that would cause a reasonable person to realize the act would likely result in the application of force; and (4) the defendant had the present ability to apply such force with the firearm.  (CALCRIM No. 875.)

Assault with a semiautomatic firearm is a general intent crime.  It does not require proof of a specific intent to injure but only an intentional act and knowledge of facts showing the act would probably and directly result in the

_____

[5]      Undesignated statutory references in parts III and IV of this opinion are to the Penal Code.

application of physical force. (*People v. Williams* (2001) 26 Cal.4th 779, 782, 790.) The crime may be committed without directly aiming at the victim. (*People v. Raviart* (2001) 93 Cal.App.4th 258, 263.) And a shooter may be liable for assaulting multiple victims with a single shot, including victims not visible to the shooter. (*People v. Trujillo* (2010) 181 Cal.App.4th 1344, 1353–1357.)

Viewed in the light most favorable to the judgment, substantial evidence supports the jury's conclusion that appellants assaulted Dorian with a semiautomatic firearm. The jury was entitled to conclude that Dorian's leg injury was caused by a bullet fired during the shooting. The physical evidence overwhelmingly supports this inference with investigators documenting bullet impact marks inside the trailer. They also observed two holes in Dorian's pants consistent with a bullet entering, grazing his left shin, and exiting— corroborating the graze wound officers observed on Dorian's leg.

The jury also had ample basis to find that appellants acted with the requisite general intent. Firing numerous rounds in a populated or semi-populated area is conduct that "under appropriate circumstances" supports an assault conviction. (*People v. Cruz-Partida* (2022) 79 Cal.App.5th 197, 207–208, 211.) Here, appellants fired between nine and 11 shots as Ernest walked toward the canopy and Alpha Project trailer. Surveillance video showed appellants in the background as Dorian walked toward the canopy, behind it and then inside the trailer. As Dorian gets to the trailer, a pedestrian walks by. Also, three cars drive by. Ernest is crossing the street as the third car drives by. The shots then ring out. From this sequence, the jury could reasonably infer that appellants saw Dorian cross the street and disappear from view as he walked behind the canopy and into the trailer. Even assuming appellants did not know Doiran had entered the trailer, the evidence supports that he remained within their direct line of fire when they opened fire.

17

The evidence was more than sufficient to support the jury's verdict. In addition to the pedestrian walking by and Dorian walking behind the canopy and into the trailer, the video shows cars in the area, a person behind the canopy, and two additional people under the canopy who run as the shots are fired. The record shows that Dorian's injury was consistent with being grazed by a bullet fired by appellants and that appellants acted willfully, with full awareness that their conduct would probably result in injury to another. Their contrary claim ignores the overwhelming evidence that they fired multiple rounds toward an occupied area where Dorian and, as the video reveals, others were present. By firing into an area where multiple individuals were present, appellants engaged in conduct that, by its very nature, would directly and probably result in the application of physical force to a person. The jury was entitled to conclude that appellants committed assault with a semiautomatic firearm within the meaning of section 245, subdivision (b).

B. *Hill's Second Degree Murder Conviction*

1. General Legal Principles

The prosecution may rely on circumstantial evidence to show aiding and abetting. (*People v. Glukhoy* (2022) 77 Cal.App.5th 576, 599.) A defendant's presence during the crime, failure to stop it, relationship with the principal, and behavior before and after the incident—such as running away—are all relevant in assessing whether the defendant assisted in the offense. (*Ibid.*) First degree willful, deliberate, and premeditated murder requires proof the defendant had the specific intent to kill. (*People v. Whisenhunt* (2008) 44 Cal.4th 174, 201 (*Whisenhunt*).) When a person commits a murder without premeditation and deliberation, it is of the second degree. (§ 189.) In a second degree murder, the "malice may be express or implied." (§ 188.) "The primary difference between

18

express malice and implied malice is that the former requires an intent to kill but the latter does not." (*People v. Soto* (2018) 4 Cal.5th 968, 976 (*Soto*).)

Even after the elimination of natural-and-probable-consequences liability for second degree murder, an aider and abettor may still be convicted of implied malice murder without expressly intending to facilitate a killing. (*People v. Reyes* (2023) 14 Cal.5th 981, 990 (*Reyes*).) Liability exists where the individual knows his conduct endangers the life of another and nevertheless acts with conscious disregard for that risk. (*Ibid.*) For implied malice murder, the killing must be proximately caused by an intentional act whose natural consequences are dangerous to human life, committed by someone aware of the danger and who consciously disregards it. (*Id.* at p. 988.) Proximate causation requires the act to have been a substantial factor contributing to the death. (*Ibid.*)

2. Analysis

Hill challenges the sufficiency of the evidence supporting his second degree murder conviction. Because the jury acquitted him of first degree murder, he contends the doctrine of collateral estoppel precludes reliance on any plan or agreement to kill Ernest, or to take him by surprise when reviewing the sufficiency of the evidence supporting second degree murder. We reject Hill's collateral estoppel argument and conclude substantial evidence establishes Hill aided and abetted implied malice murder and was a substantial concurrent cause of Ernest's death.

First, we reject Hill's argument that the jury's acquittal of him and Garrett of first degree murder precludes reliance on any perceived plan or agreement to kill Ernest. The premise of Hill's argument is flawed. An acquittal of first degree murder reflects only that the jury did not find beyond a reasonable doubt that he acted with the *specific intent to kill* required for a willful, deliberate, and premeditated murder. It does *not* negate the possibility

19

that he committed a lesser form of homicide requiring a different, less culpable mental state. This distinction is critical.

California law makes clear that verdicts on different counts need not be consistent. "An acquittal of one or more counts shall not be deemed an acquittal of any other count." (§ 954.) Juries may " 'acquit whatever the evidence,' " and courts do not require consistency among verdicts. (*People v. Ramirez* (2022) 13 Cal.5th 997, 1121–1122 (*Ramirez*).) As a result, the jury's rejection of premeditated murder cannot be treated as a factual finding that Hill lacked the mental state required for implied malice second degree murder.

This follows directly from the governing legal standards. First degree murder demands proof of a *specific intent to kill* formed after premeditation and deliberation. (*Whisenhunt, supra*, 44 Cal.4th at p. 201.) Implied malice murder, by contrast, does not require an intent to kill. (*Soto, supra*, 4 Cal.5th at p. 976.) A defendant—including an aider and abettor—may be liable for implied malice murder when the defendant intentionally engages in conduct dangerous to human life, knows of the danger, and acts with conscious disregard for that life-threatening risk. (*Reyes, supra*, 14 Cal.5th at pp. 988–990.) Thus, the mental state for implied malice is fundamentally different from, and less exacting than, the mental state required for premeditated murder.

The jury's acquittal of first degree murder therefore establishes only that the prosecution did not prove intent to kill beyond a reasonable doubt. It does not—and legally cannot—bar a finding that Hill acted with conscious disregard for life or that his intentional conduct was a substantial factor in causing Ernest's death. Because implied malice does not require a plan, an agreement, or a preexisting intent to kill, the jury's rejection of first degree murder has no preclusive effect on its ability to convict Hill for second degree murder based on implied malice.

Finally, when reviewing the sufficiency of the evidence supporting the second degree murder conviction, our task is confined to assessing whether substantial evidence supports *that* verdict. We evaluate the nature and quality of the evidence supporting that count, not the overall coherence of the jury's decisionmaking. (See *People v. Lewis* (2001) 25 Cal.4th 610, 656.) We are not bound by factual conclusions the jury may have implied in returning an inconsistent or lenient verdict on another count. (*Ramirez, supra*, 13 Cal.5th at pp. 1121–1122.) For these reasons, the jury's acquittal on first degree murder neither constrains our review nor undermines the validity of its conviction for second degree implied malice murder.

In response to a jury note regarding how aiding and abetting works if the jury finds that first degree murder does not apply, the court instructed, without objection, on aiding and abetting second degree implied malice murder.[6] Accordingly, to prove implied malice murder, the relevant inquiry here is whether Hill knew Garrett intended to commit the act (shooting at Ernest), intended to aid Garrett in the shooting, knew the shooting was dangerous to life, and acted in conscious disregard for life. (*Reyes, supra*, 14 Cal.5th at p. 992.)

---

[6] The instruction explained that the People had to prove the following elements to establish second degree implied malice murder under an aiding and abetting theory: "1. The perpetrator committed a life endangering act with conscious disregard for human life that resulted in the death of [the victim]; [¶] 2. The defendant knew that the perpetrator intended to commit the life endangering act; [¶] 3. Before or during the commission of the act, the defendant intended to aid and abet the perpetrator in committing the life endangering act; [¶] 4. The defendant's words or conduct did in fact aid and abet the perpetrator's commission of the life endangering act; [¶] 5. The defendant knew the life endangering act was dangerous to human life; [¶] AND [¶] 6. The defendant acted with conscious disregard for human life when he aided and abetted the perpetrator."

The evidence shows that as Ernest crossed the street, Hill fired the first shots, and Garrett immediately fired multiple rounds. Hill then fired an additional shot as he fled. Appellants ran back to Hill's car and drove away together. A gang expert, responding to a hypothetical mirroring these facts, opined that the shooters were members of the same gang and that their coordinated conduct indicated a plan or mutual understanding.

This evidence amply supports the conclusion that Hill aided and abetted implied malice murder. Hill initiated the gunfire, Garrett unleashed a rapid barrage of shots, and Hill capped the attack with a final shot—conduct demonstrating their shared awareness that firing multiple rounds toward Ernest was inherently dangerous to human life. Their coordinated movements before the shooting, the immediate succession of gunfire, and their joint flight strongly support a finding that Hill not only knew Garrett intended to commit a life endangering act, but that he intended to and did facilitate it. Hill's decision to fire a "parting shot" after Garrett's barrage reinforces that he acted with conscious disregard for human life and that his conduct was a substantial concurrent cause of Ernest's death.

In sum, the record demonstrated a coordinated, dangerous course of conduct in which Hill knowingly participated and which directly resulted in Ernest's death. The jury's verdict reflects a reasonable and supported conclusion that Hill acted with conscious disregard for human life and aided Garrett in committing a life endangering act. Accordingly, substantial evidence supports Hill's second degree murder conviction, and reversal is unwarranted.

C.    *Hill's 25 Years to Life Enhancement*

The jury found true the allegation that Hill intentionally and personally discharged a firearm and proximately caused Ernest's death. The

22

trial court imposed a 25 years to life sentencing enhancement for this true finding. (§ 12022.53, subd. (d).) To prove this allegation, the People were required to show Hill (1) personally and intentionally discharged a firearm and (2) proximately caused great bodily injury or death. (*Ibid.*) Hill does not dispute that he personally and intentionally fired a gun. Instead, he contends that no rational juror could have found beyond a reasonable doubt that his conduct proximately caused Ernest's death because, in his view, it was not reasonably foreseeable that Garrett would shoot or kill Ernest. We disagree.

When the actions of multiple people work together as proximate causes of a death, each person's conduct is considered a proximate cause so long as it was a substantial factor in bringing about the death. (*People v. Sanchez* (2001) 26 Cal.4th 834, 847.) Causes are considered concurrent when they were both operating at the time of death and combined to produce the fatal result. (*Ibid.*)

Substantial evidence supports the jury's finding. The evidence established that appellants fired multiple rounds at Ernest within seconds of each other, and either shooter could have inflicted the injuries that resulted in Ernest's death. The jury was properly instructed that more than one cause of death may exist, and that an act constitutes a cause only if it is a substantial factor— meaning more than a trivial or remote contribution—and need not be the sole cause. (CALCRIM No. 3149.) Viewing the record in the light most favorable to the verdict, the evidence and all reasonable inferences amply support the conclusion that Hill's gunfire was a substantial, concurrent, and therefore proximate cause of Ernest's death.

IV.

Hill's Prior Convictions

After the jury returned its verdicts, the trial court held a bench trial on Hill's charged prior convictions and aggravating factors. The court accepted Hill's admission to a single prior serious felony conviction and a prior strike conviction. (§ 667, subds. (a)(1), (b)–(i).) These admissions were based on Hill's 2010 conviction for assault with a deadly weapon with a gang enhancement.[7] (§§ 245, subd. (a)(1); 186.22, subd. (b)(1)). The court sentenced Hill as a second striker based on his admission that his 2010 conviction of aggravated assault with a gang enhancement constituted a strike.

Hill contends his 2010 conviction qualifies as a prior serious felony conviction only if it was committed for the benefit of a criminal street gang. He argues the prior strike finding must be vacated and the matter remanded for retrial under the current version of section 186.22. The People agree that the trial court's true findings on both the prior strike and the prior serious felony enhancement should be vacated.

Assembly Bill No. 333 (2021–2022 Reg. Sess.) increased the evidentiary requirements for proving gang offenses and enhancements by amending section 186.22. (Stats. 2021, ch. 699, § 4.) Hill's prior convictions were based on his admission to the elements of section 186.22 as it read at the time of his plea. At that time, the prosecution was not required to prove—and Hill did not admit—the elements newly required under Assembly Bill No. 333. In *People v. Fletcher* (2025) 18 Cal.5th 576 (*Fletcher*), the California Supreme Court held

---

7    In 2010, Hill pled guilty to violating section 245, subdivision (a)(1), as well as the gang enhancement. The factual basis for Hill's plea was: "I committed an assault by means likely to produce great bodily injury. This was committed in association with a criminal street gang with specific intent to assist in criminal conduct by gang members."

that these heightened requirements apply when assessing whether pre–Assembly Bill No. 333 convictions may be used for certain sentencing purposes. (*Fletcher,* at p. 583.)

Because Hill's prior convictions predated Assembly Bill No. 333, the record does not establish they satisfy the amended statute's more stringent requirements, and because this case is not yet final, the parties agree that the trial court's true findings on the prior strike and serious felony enhancement must be vacated and the matter remanded for resentencing. If the prosecution elects to retry those allegations, the trial court must adjudicate them "applying the elements of section 186.22 as amended by Assembly Bill [No.] 333." (*Fletcher, supra*, 18 Cal.5th at p. 608.)

DISPOSITION

Garrett's judgment is affirmed.  The true findings on Hill's prior serious felony conviction and prior strike allegations are vacated, and Hill's case is remanded for possible retrial of the allegations.  In all other respects, Hill's judgment is affirmed.

O'ROURKE, J.

WE CONCUR:

McCONNELL, P. J.

BUCHANAN, J.